. Coös,
June 25, 1931.

EMMA F. COLE *v*. LEWIS A. MORSE.

FRANK H. COLE *v*. SAME.

*Warren W. James* (by brief and orally), for the plaintiffs.

*Murchie, Murchie & Blandin (Mr. Alexander Murchie* orally), for the defendant.

SNOW, J.   The collision occurred at the top of a hill on the Newburyport turnpike, between the defendant's Pontiac sedan going north and a roadster of the same make coming in the opposite direction.   The defendant was driving his own car.   The plaintiff, Emma, who will hereinafter be referred to as the plaintiff, was riding beside him and the defendant's wife occupied the rear seat.   At some time before the accident, while the defendant was traveling at a speed of twenty-five miles per hour, a Ford roadster overtook and passed them at a high rate of speed which was the subject of remark.   At that time the defendant inquired of the plaintiff "Do you want to see me do it" to which she replied, "No; you know I don't like to drive fast."

The evidence, interpreted most favorably for the plaintiff, warranted findings of the following facts of the accident.   The hill upon which it occurred was between two and three hundred yards in length. The grade was such that the driver could not see over its crest.   The width of the traveled roadway was insufficient for three cars abreast. At the foot of the hill the defendant overtook another sedan traveling around twenty miles per hour, and sought to pass it.   He was then driving between thirty and thirty-five miles per hour.   He sounded his horn and speeded up to pass.   As he got opposite the other car its driver also increased his speed, and the two cars traveled up the hill substantially alongside.   The defendant tried to gain on the other car but could not.   During this race there were no other cars on the hill.   Although there was opportunity to fall in behind the other car the defendant kept abreast of it to the top of the hill.   He drove on the extreme left side of the road.   As he reached the crest he saw the Pontiac roadster approaching from the north too late to avoid a collision, which occurred head-on, notwithstanding his effort to avoid it by applying his brakes and swinging to the left as far as possible.   The defendant was an experienced driver, and knew that the Newburyport turnpike was a very dangerous road with heavy traffic at times.   As he was proceeding up the hill his attention was expressly directed to what he was doing by the plaintiff, who was frightened and said to to him, "You don't hesitate to pass a car on a hill."   He made no reply and the plaintiff offered no further objection.   Immediately following the accident the defendant was arrested and pleaded guilty to a charge of negligent driving and paid a fine imposed therefor.

In argument it is urged in diminution of the degree of the defend-

ant's negligence that he was acting within his right in attempting to pass the car ahead of him; that all the way up the hill he expected to outstrip it, and that when confronted by the opposing car he did the best he could to avoid the collision. This argument loses sight of the fact that the gist of the negligence alleged lay not in the defendant's attempt to pass the other car but in his persistence in the attempt when it took him into an area of extraordinary danger from which he would be helpless to extricate himself and his guest if he should meet a car coming from the north. The fact that earlier on the trip while ascending a similar hill, but under dissimilar circumstances, the defendant, without objection from the plaintiff, had, without difficulty, passed another car which did not contest the way with him is of no controling importance upon the issue here presented.

The top of a hill on a two-way thoroughfare subject to heavy traffic which precludes the sight of an oncoming automobile should be the equivalent of a red light to a motorist traveling in the line of opposing traffic. Driving a powerful machine at great speed into a space where the driver cannot see, and where obstacles are reasonably to be expected, falls but little short of such a reckless disregard of the probable consequences as would be accounted wanton and wilful conduct. It is very much like entering such space with one's eyes closed. It needs no argument to show that such conduct would support a finding of utter forgetfulness of legal obligations to others who might be affected thereby, an omission of legal duty owed them of an aggravated character, and negligence of an appreciably higher magnitude than the want of ordinary care, as those terms are used and have been interpreted by the courts of Massachusetts. *Altman* v. *Aronson*, 231 Mass. 588, 591; *Lee* v. *Chamberlin*, 84 N. H. 182, 183; *Learned* v. *Hawthorne*, 269 Mass. 554; *Blood* v. *Adams*, 269 Mass. 480; *Parker* v. *Moody*, 274 Mass. 100; *Dzura* v. *Phillips*, 275 Mass. 283. Specifically, it could be found on the record here that the defendant acted in such utter disregard of the dictates of prudence as amounted to a complete neglect of the safety of his guest, the plaintiff. *Manning* v. *Simpson*, 261 Mass. 494. The evidence warranted a finding that the accident, and per consequence the plaintiff's injury, were caused by the defendant's gross negligence.

In accordance with the record the order is

*Judgment for the plaintiffs, Emma F. Cole for two hundred and fifty dollars ($250), Frank H. Cole for one thousand dollars ($1000).*

All concurred.