EATON et al.    v.    BASS et al.

WOODEN

v.

HOOVER MOTOR EXPRESS CO. et al.

Nos. 11959, 11960.

United States Court of Appeals
Sixth Circuit.
Aug. 17, 1954.

Erwin Mitchell, Dalton, Ga. (Douglas W. Mitchell, Jr., Dalton, Ga., W. W. Mitchell, Memphis, Tenn., Gus A. Wood, Jr., Chattanooga, Tenn., on the brief), for appellants.

Alvin O. Moore, Chattanooga, Tenn. (Silas Williams, Jr., Spears, Reynolds, Moore & Rebman, Chattanooga, Tenn., on the brief), for appellees.

Before ALLEN and MILLER, Circuit Judges, and STARR, District Judge.

MILLER, Circuit Judge.

These two actions, in which separate plaintiffs sought damages from the same defendants by reason of an automobile accident in Whitfield County, Georgia, were heard together in the District Court. Following jury verdicts in favor of the defendants in each action, upon which judgments were entered, the plaintiffs filed these separate appeals.

The accident occurred about 2:00 a. m. on December 13, 1951 on U. S. Highway No. 41, which is the main highway between Chattanooga, Tennessee, and Atlanta, Georgia. An automobile which belonged to Claude Slaughter was being driven northward by Elmer Ray Eaton, in which the driver's father Z. H. Eaton, his mother Lennie Ethel Eaton, and his sister Mae Eaton Slaughter were occupants. Immediately prior to the accident, the Eaton car was behind a truck which was being driven by appellant J. D. Wooden, at a speed of about 35 to 40 miles per hour, both cars going up a grade to the crest of a hill. Eaton proceeded to pull out into the left side of the road to pass the truck driven by Wooden. Two trucks of the appellee, Hoover Motor Express Company, were approaching the crest of the hill from the opposite direction. The first truck was driven by Wade Moore and the second truck by the appellee, Harold Bass, who was some 250 to 300 feet behind Moore. After the first truck topped the crest of the hill, Moore saw the two sets of headlights approaching him covering both sides of the road, and jammed on his brakes in order to avoid a collision with the Eaton car, approaching at a speed estimated by Moore at 50 to 55 miles per hour. This enabled the Eaton car to pass the Wooden truck and to get back on the right side of the road in front of the Wooden truck. However, the action of the first Hoover truck caused Bass, who was driving the second Hoover truck, to also jam on his brakes to avoid running into the rear of the first Hoover truck. When Bass jammed the brakes of the tractor-trailer truck he was driving the left front wheel of his truck locked causing it to swerve to the left and, in spite of Bass's efforts to prevent it, into the Eaton car. The Wooden truck immediately thereafter collided with the Eaton car from the rear. Lennie Ethel Eaton and Mae Eaton Slaughter were killed.

In action No. 11,959, Z. H. Eaton and the children of Lennie Ethel Eaton sought damages by reason of the death of Mrs. Eaton. Bass and the Hoover Motor Express Company interpleaded as

third party defendants Elmer Ray Eaton and J. D. Wooden. In action No. 11,960, Elmer Ray Eaton sought damages for the personal injures sustained by him. Bass and the Hoover Motor Express Company interpleaded J. H. Wooden as a third party defendant, who filed a cross action against Bass and the Hoover Motor Express Company.

In submitting the case to the jury, the Court asked the jury to make special findings in response to interrogatories, as authorized by Rule 49(a), Federal Rules of Civil Procedure, 28 U.S.C.A. In answering these interrogatories the jury found specifically that the appellees Hoover Motor Express Company and Harold Bass were not guilty of negligence proximately causing or contributing to the death and injuries; that they were not guilty of negligence in the use of a defective brake; that the collision and injuries did not result from the negligence of Bass and the Hoover Motor Express Company combined with the negligence of Eaton and Wooden or either of them; and that Elmer Ray Eaton was guilty of negligence which was the sole proximate cause of the accident. The judgments dismissing the actions were the result of these findings.

On this appeal, appellants do not attack so much of the findings that hold that Bass was not guilty of common law negligence in the operation of the Hoover truck and that Eaton was negligent in the operation of the Eaton car. They do contest the findings that the Hoover Motor Express Company was not guilty of negligence in the use of a defective brake and that Eaton's negligence was the *sole* proximate cause of the accident. They contend that by reason of Sec. 68–302, Code of Georgia, the Hoover Motor Express Company was guilty of negligence which caused the accident because of the defective brake, and that the negligence of the driver of the Eaton car was not imputed to Lennie Eaton who was merely a passenger in the car. With respect to the claim of Elmer Eaton, they rely upon the rule of comparative negligence in effect in Georgia under Sec. 94–703, Code of Georgia.

Sec. 68–302, Code of Georgia, provides that every motor vehicle while in use or operation upon the streets or highway shall be equipped with efficient and serviceable brakes. Appellants contend that a violation of this section constitutes negligence per se; and that under the undisputed evidence in the case the jury findings that the appellees were not guilty of negligence in the use of a defective brake and that Elmer Ray Eaton was guilty of negligence which was the sole proximate cause of the accident were not supported by the evidence and are against the great weight of the evidence.

The District Judge instructed the jury that while the Georgia Code required that the truck have efficient brakes, it did not mean that the brakes were insured to be efficient; that it meant they must be efficient in accord with reasonable inspection, that is, what the jury would consider an ordinary prudent man would do in ascertaining whether or not he had a defective brake; that the owner was required to use ordinary care and prudence to keep his car mechanically correct, including the brakes; that if there was a latent defect that was unknown and could not be known by the usual inspection through the exercise of reasonable care, the defective brake would not be a negligent act; but if it could be ascertained by reasonable inspection it would be a negligent act. He left it to the jury to determine whether the appellees had exercised reasonable care to find defective parts in the tractor, including defective brakes, and whether a defective brake was the proximate cause of the injury.

■ There appears to be some conflict in the authorities on the question of whether a violation of such a statute is negligence as a matter of law or merely evidence of negligence to be considered by the jury with other facts in the case. Annotation, 170 A.L.R. 660–667. Appellants rely upon Railway Express Agency v. Standridge, 68 Ga.App. 836, 24

899

S.E.2d 504 and Harper v. Hall, 76 Ga. App. 441, 446, 46 S.E.2d 201, as holding that the violation constitutes negligence per se. But these were not cases involving the issue of a latent defect. We think the Georgia rule with respect to a latent defect is better shown by the case of Mathis v. Mathis, 42 Ga.App. 1, 155 S.E. 88, which we construe to be that the operator is negligent if he violates the provisions of the Code with knowledge of the defect or where by the exercise of ordinary care he should have known of such defect. See also: Romansky v. Cestaro, 109 Conn. 654, 145 A. 156; Brickell v. Boston & Maine Transportation Co., 93 N.H. 140, 36 A.2d 622; Weisman v. Arrow Trucking Co., Mo. App., 176 S.W.2d 37. We think the issue was correctly submitted to the jury under the instructions given.

Appellants contend, however, that the evidence offered by the appellees was insufficient to take the case to the jury on such an issue, because it failed to show any inspection of the brakes before the truck left the terminal at Nashville, Tennessee.

Hunter Mir, shop foreman for Hoover Motor Express Company, testified for the appellees, over objection of appellants, that he was in charge of safety checking the trucks before they went out on the highway; that it was the custom of the company to check every unit that went out to see that it was safe to put on the road; that the trucks were driven through three lanes in the shop; that the mechanics tried the brakes and the safety equipment, lights, horn and anything pertaining to the safety of the operation of the equipment; that if any defect is found it is repaired or the unit is cut out and replaced by another; and that no equipment went out on the road without it having been checked through his department. He had no records or personal knowledge about the check which was given the particular truck involved in the accident.

Appellants contend that evidence of custom or usage is not admissible to prove the exercise of due care by one charged with negligence, in that what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not, and that in any event such custom must be a general custom among others acting under similar circumstances, rather than the usuage or custom of a single person. Texas & Pacific Ry. Co. v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 47 L.Ed. 905; Standard Oil Co. v. Swan, 89 Tenn. 434, 15 S.W. 1068, 10 L.R.A. 366. The rule is not an unqualified one, Brigham Young University v. Lillywhite, 10 Cir., 118 F. 2d 836, Annotation, 137 A.L.R. 611, and in any event is not applicable to the present case.

The evidence was not received for the purpose of proving that appellees were not negligent because they followed a custom generally in use in the particular industry. It was offered and received for the purpose of proving the existence of a particular fact, namely, that the truck was inspected in a certain way, leaving open the question whether such inspection, if it did take place, was sufficient to constitute due care. No evidence was offered or received pertaining to the custom of other truck operators, with which the particular inspection by the appellees would be compared. We think the District Judge ruled correctly in admitting the evidence on the ground that it had probative value on the issue of what, if any, inspection the truck received before being sent out on the highway, but at the same time pointing out that it was not conclusive that the particular truck was so inspected, and that whether it was or was not so inspected was still a question for the jury. Knickerbocker Life Ins. Co. v. Pendleton, 115 U.S. 339, 344–347, 6 S.Ct. 74, 29 L.Ed. 432; Thorn v. Aler, 92 W.Va. 290, 114 S.E. 741, 28 A.L.R. 536, 542. See Atlanta Coco-Cola Bottling Co. v. Shipp, 170 Ga. 817, 154 S.E. 243, 71 A.L.R. 1295.

Appellees' evidence also showed that Bass left the Nashville terminal at approximately 9:15 p. m., went through Murfreesboro, Manchester, and up Monteagle Mountain to the top where he made

**900**

a short stop, then down the mountain through Chattanooga and to the scene of the accident, a total distance of approximately 165 miles. During this drive he used the brake at stop signs, in braking down on hills, and in coming from the top of Monteagle Mountain to Chattanooga. He had not experienced any pulling on the steering wheel, and the brake had acted perfectly when he had applied it. He had not had any occasion to jam on his brakes suddenly before the accident.

In our opinion, the foregoing evidence was sufficient to take the case to the jury on the factual issue of whether the appellees knew, or in the exercise of ordinary care should have known, of such a defect in the brakes as developed later under the particular facts in this case. Mathis v. Mathis, supra, 42 Ga.App. 1, 155 S.E. 88.

The judgments are affirmed.